IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Leyva; et. al., ) | No. CV 04-349-TUC-CKJ (HCE) |
| ) | |
| Plaintiffs, ) | **REPORT & RECOMMENDATION** |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| United States of America, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Nancy Fiora. On July 9, 2005, this matter was referred to the undersigned Magistrate Judge in light of Magistrate Judge Fiora's retirement.

Pending before the Court is Defendant's Motion for Summary Judgment. For the following reasons, the Magistrate Judge recommends that the District Court grant Defendant's Motion.

## I.     FACTUAL & PROCEDURAL BACKGROUND

On July 12, 2004, Plaintiffs Frank and Ana Maria Leyva, husband and wife, filed the instant medical malpractice action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*[1]  The following allegations are taken from Plaintiffs' Complaint.

---

[1] At the inception of this action, Plaintiffs were represented by retained counsel, Mr. O. Mark Marquez.  On  April 3, 2006, Plaintiffs' counsel was relieved of further

On or about July 31, 2001, Mr. Leyva presented for treatment at Holy Cross Hospital in Nogales, Arizona, concerning pain in his feet, which he believed to be caused by gout. Mr. Leyva was examined by Dr. Dexter who prescribed 10 milligrams of Oxycontin, an opiate for pain relief, to be taken orally every 12 hours. Dr. Dexter also directed Mr. Leyva to contact his primary care physician if the pain continued. Thereafter, Mr. Leyva returned home, took the medication as prescribed and felt no relief from the pain.

For the following two days, August 1 through 2, 2001, Mr. Leyva attempted to contact Dr. Maria Pina[2] without success. On August 3, 2001, Mr. Leyva "explained to Dr. Pina" that he had been treated at the hospital for foot pain and had been directed to take 10 milligrams of Oxycontin every 12 hours. "Without personally speaking to Plaintiff Frank Leyva, or examining him, Dr. Pina instructed...[him] to increase his dosage of Oxycontin to 10 mg. every six hours." (Complaint, p. 3) Mr. Leyva followed Dr. Pina's instructions.

On or about August 6, 2001, Mr. Leyva "went into the household bathroom to defecate. Once he sat on the toilet, he could not lift himself from the commode...[He] sat there for approximately five hours." (Id.) Mrs. Leyva, who "attempted to assist him but could not," eventually called an ambulance. (Id. at p. 4) Mr. Leyva was transported by ambulance to Holy Cross Hospital. Examination of Mr. Leyva revealed that his feet were "completely paralyzed and in pain." (Id.) Mr. Leyva was transferred to St. Joseph's Hospital

---

representation of Plaintiffs due to counsel's failing health. (April 3, 2006 Order) The case was stayed until July 5, 2006 so that Plaintiffs could obtain other counsel. (April 3, 2006 Order; July 5, 2006 Order) After it became apparent that Plaintiffs were unable to locate counsel who wished to take the case, the Court entered a scheduling order setting new deadlines and Plaintiffs proceeded to represent themselves. (July 5, 2006; July 7, 2006 Scheduling Order)

[2]It appears from the allegations in the Complaint that Dr. Pina, who is employed by Mariposa Community Health Center in Nogales, Arizona, was Mr. Leyva's primary care physician. (*See* Complaint, p.3) (indicating that Mr. Leyva called Dr. Pina as directed); *(see generally* Defendant's Answer). The Complaint and other papers filed by Plaintiff refer to *Maricopa* Community Health Center and *Mariposa* Community Health Center. The correct name of the facility at issue is *Mariposa* Community Health Center.

in Tucson, Arizona, where he was "diagnosed as suffering from partial paraplegia and sciatica of both lower limbs and both feet." (Id.)  Mr. Leyva was treated at St. Joseph's Hospital through September 6, 2001.  During that time, he was placed in a physical therapy program and "prescribed various orthodontic devices...." (Id.)  Mr. Leyva "is crippled, suffering from bilateral sciatica, and such injuries are permanent in nature." (Id.)

Attached to the Complaint are several typewritten pages.  Information contained therein include that Mr. Leyva became somnolent during the five hours that he remained on the commode.  Plaintiffs also indicate that

> [i]t is the opinion of Dr. David Anaise, [Plaintiffs']... expert, that Dr. Pina fell below the standard of care in not examining Mr. Leyva, in not conferring with Holy Cross Hospital personnel, and more particularly in increasing the dosage of the Oxycontin to 10 mg. [e]very six hours.  The manufacturer's instructions specifically state that, although the dosage of Oxycontin can be increased 25% to 50%, yet it is inappropriate to increase the dosage frequency.  It is also Dr. Anaise's opinion that Dr. Pina knew that Frank Leyva was an elderly person, was morbidly obese, had a decreased respiratory reserve and should have known by examining hospital records, that his creatinine clearance indicated renal impairment.  A study of the manufacturer's instructions would have clearly indicated that an overdosage of Oxycontin would be improper.

(attachments to Complaint)

Defendant filed the instant Motion for Summary Judgment on December 7, 2006.  On December 8, 2006, the Court entered an order, *inter alia,* advising Plaintiffs that their failure to respond to Defendant's Motion by January 8, 2007 may be deemed as their consent to the granting of the Motion pursuant to L.R.Civ. 7.2(i), Rules of Practice of the U.S. District Court for the District of Arizona, and in such case, judgment may be entered dismissing this action without further notice. (December 8, 2006 Order,  p. 3)  The response time has passed and Plaintiffs have not responded to Defendant's Motion for Summary Judgment.

## II.     DISCUSSION

### A.     Standard

The Local Rules of Practice of this Court provide in pertinent part that: "if the unrepresented party or counsel does not serve and file the required answering memoranda [to a pending motion],...such non-compliance may be deemed a consent to the...granting of

the motion and the Court may dispose of the motion summarily." L.R.Civ. 7.2(i), Rules of Practice of the U.S. District Court for the District of Arizona. The decision whether to enter summary judgment pursuant to a local rule such as L.R.Civ. 7.2(i) is within the district court's discretion. *Henry v. Gill Indus.,* 983 F.2d 943, 950 (9th Cir. 1993) (discussing predecessor to L.R.Civ. 7.2(i)). In the Ninth Circuit, the district court abuses its discretion when it grants a motion for summary judgment pursuant to a local rule such as L.R.Civ. 7.2(i) where the movant's papers are insufficient to support the motion or on their face reveal a genuine issue of material fact. *Id.*; *Martinez v. Stanford,* 323 F.3d 1178, 1182-1183 (9th Cir. 2003) (same); *see also Brydges v. Lewis,* 18 F.3d 651 (9th Cir. 1994) (affirming entry of summary judgment pursuant to predecessor to L.R.Civ. 7.2(i) where the *pro se* opponent to the motion was warned of the consequences of his failure to respond). Accordingly, the Ninth Circuit requires review of the sufficiency of Defendant's Motion for Summary Judgment.

Pursuant to the Federal Rules of Civil Procedure, a party may seek summary judgment where there is no genuine issue as to any material fact and that party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The initial burden rests on the moving party to point out the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although reference is made to the movant's "burden," Rule 56 places no evidentiary burden on the moving party beyond that which is required to prevail at trial. Therefore, while the adverse party must offer evidence sufficient to raise a genuine issue of fact on an issue for which that party has the burden of proof, the moving party need provide nothing more than a reference to those materials on file in the case that support the movant's belief that there is an absence of any genuine issue of material fact. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once satisfied, the burden shifts to the opponent to come forward with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)). *See also Celotex,* 477 U.S. at 324 (the opponent must demonstrate through production of probative evidence that an issue of fact remains to be tried.) Indeed, a party opposing summary judgment may not rest on mere allegations or denials in his pleading. Fed. R. Civ. P. 56(e). Nor may the opponent rely upon conclusory or speculative testimony to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distrib.,* 69 F.3d 337, 345 (9th Cir. 1995).

When judging the evidence at the summary judgment stage, a district court is not to make credibility determinations or weigh conflicting evidence, but is required to view all inferences in the light most favorable to the non-moving party. *Musick,* 913 F.2d at 1394. The ultimate question is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). The mere existence of a scintilla of evidence supporting the non-movant's position will be insufficient. *Anderson,* 477 U.S. at 252. There must be evidence from which the trier of fact could reasonably find for the non-movant. *Id.* If the factual context makes the non-movant's claim implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita,* 475 U.S. at 587.

B.    Elements of Medical Malpractice

Under the Federal Torts Claims Act, the United States may be held liable for injury caused by the negligent act of an employee "under circumstances where the United States, if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. §2671 *et seq.* Plaintiffs claim that Dr. Pina, while acting in the scope of her employment for the United States in Arizona, rendered treatment that fell below the standard of care when she,

*inter alia*, advised Mr. Leyva to increase the frequency of Oxycontin dosages. Therefore, the liability of Defendant herein is determined in accordance with the substantive law of Arizona. *Richards v. United States,* 369 U.S. 1, 8-10 (1962); *Louie v. United States,* 776 F.2d 819, 824 (9th Cir. 1985).

Medical malpractice claims in Arizona are governed by statute. *See* A.R.S. § 12-562, *et seq.* To prevail on their claim Plaintiffs herein must establish:

> [b]oth of the following...necessary elements of proof that injury resulted from the failure of a health care provider to follow the accepted standard of care:
>
> 1.   The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances.
>
> 2.   Such failure was a proximate cause of the injury.

A.R.S. §12-563. To establish these elements, the plaintiff must present "expert medical testimony unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it." *Pendleton v. Cilley,* 118 Ariz. 84, 86, 574 P.2d 1303, 1305 (1978) (citations omitted); *see also Bell v. Maricopa Medical Center,* 157 Ariz. 192, 195 n.1, 755 P.2d 1180, 1183 n.1, (App. 1988) (same). Additionally, the burden of establishing these elements "must be met both at trial and in opposition to the defendant's motion for summary judgment." *Pendleton,* 118 Ariz. at 86, 574 P.2d at 1305; *see also McGuire v. DeFrancesco,* 168 Ariz. 88, 811 P.2d 340 (App. 1990) ("In response to a motion for summary judgment, a medical malpractice plaintiff must show that expert testimony is available to establish that the provider's treatment fell below the applicable standard of care.") Plaintiffs bear the same burden at summary judgment as they do at trial. *See Musick,* 913 F.2d at 1394.

### C.   Plaintiffs' Disclosure Concerning Expert Witnesses

On June 10, 2005, the Court entered a Scheduling Order setting out deadlines to govern this case, including the deadlines for disclosure of expert witnesses and rebuttal expert witnesses and their reports pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. (June 10, 2005 Scheduling Order) The deadlines were extended several times.

(*See* July 18, 2005 Order; September 14, 2005 Order; February 10, 2006 Order; July 7, 2006 Order)

The record reflects the following information regarding the use of expert testimony on Plaintiffs' behalf.

In June 2003 when Plaintiffs filed their administrative claim in relation to this action, Plaintiffs included therein a March 25, 2002 affidavit from David Anaise, M.D., J.D.[3] (Defendant's Statement of Facts (hereinafter "DSOF") Ex. C) In his affidavit, Dr. Anaise opined that Dr. Pina's treatment of Mr. Leyva fell below the standard of care. (Id.)

Plaintiff's June 7, 2005 Initial Disclosure Statement served on Defendant in connection with the instant action included the following:

> Defendants have in their possession [sic] regarding Plaintiffs' expert, David Anaise, and his opinions. Plaintiffs have paid Dr. Anaise $500.00 thus far, but have not reached an agreement regarding testimony and fees.

(DSOF, p.2 & Ex. D)

Plaintiff's June 7, 2005 Answer to Interrogatories included the following:

> Dr. David Anaise, now listed as an expert in this case, believes Maricopa [sic] Community Clinic, Dr. Maria Pina, and other personnel of the health center fell below standard of care. Also, Dr. Kaiphona Wong, on or about August 10, 2001, was of opinion Mariposa Clinic and personnel fell below standard of care.
>
> \*\*\*
>
> Both Dr. Wong and Dr. Anaise have reviewed plaintiff's hospital records.
>
> \*\*\*
>
> Defendant's attorney has [sic] copy of Dr. David Anaise's report. Dr. Wong has not prepared a written report.

---

[3]Before a party may file a court action pursuant to the Federal Torts Claims Act, he must first file an administrative claim with the appropriate federal agency. *See* 28 U.S.C. § 2675. Plaintiffs filed such a claim on June 4, 2003. (DSOF, Ex. B)

(DSOF, p.2 & Ex. E) Plaintiffs also indicated that Dr. Wong and Dr. Anaise were expected to testify about "their knowledge of side effects and contra-indications of use of Oxycontin." (DSOF, Ex. E)

On October 26, 2005, Defendant disclosed the following experts: Dr. Alan Rogers, Dr. John Palmer, and Dr. Debra Walter.  (DSOF, p.2 & Ex. F) Included with the disclosure were reports from each expert, curriculum vitae, and fee information.  (Id.)  Therein, Defendant's standard-of-care expert, Dr. Alan Rogers, opined that based upon his review of the records:

> Dr. Pina did not fall below the standard of care in her treatment of Mr. Leyva. Her usage and dosing of the analgesic Oxy[c]ontin in light of Mr. Leyva's acute condition, age and premorbid diagnoses was appropriate and within the guidelines established by the manufacturer.  Since Mr. Leyva complained Oxycontin 20 mg daily was not controlling his pain, it was appropriate for Dr. Pina, to increase Oxycontin to the next incremental dose of 40 mg per day.  It is common practice for experienced clinicians to divide dosing of pain medications to three or four doses per day to avoid peaks and troughs in serum levels.  Therefore Oxycontin 10 mg given four times per day yields the correct incremental daily dose of 40 mg. While the package insert and manufacturer's guidelines state that dosage titration should be made in steps of 25-50% of the daily dose, those guidelines specifically make an exception for the increment from 20 mg to 40 mg that is mathematically a 100% increase.
> It is my opinion that the injury suffered by Mr. Leyva was not directly a consequence of Dr. Pina's prescribing.

(DSOF, Ex. G)

On November 30, 2005, Plaintiffs filed a Notice of Rebuttal Expert listing Dr. Richard Miller and his address.

On January 10, 2006, Defendant filed a "Motion to Strike Plaintiffs' Rebuttal Expert and Request for Date Certain for Deposition of David Anaise, M.D., J.D." (hereinafter "Defendant's Motion to Strike").  Defendant asserted that (1) other than Dr. Anaise's affidavit submitted with Plaintiff's June 2003 claim, Plaintiffs have not disclosed "any expert reports or other affidavits prior to the October 31, 2005 deadline" for such disclosure; (2) defense counsel "assumes that David Anaise, M.D., J.D. is Plaintiffs' standard of care expert"; (3) on the day notice of Plaintiffs' rebuttal experts was due, Plaintiffs' counsel contacted defense counsel to request an extension of that deadline but defense counsel "could not agree to the

request as Plaintiffs' claim has been pending for over two and one half years and the parties have already extended disclosure deadlines on two occasions due, at least in part, to Plaintiffs' delays"; (4) Plaintiffs failed to disclose Dr. Miller's expert report, curriculum vitae, or fee information as required by Rule 26(a)(2) of the Federal Rules of Civil Procedure; and (5) on seven occasions between September 6, 2005 and January 10, 2006, defense counsel requested from Plaintiffs' counsel "dates on which to schedule Dr. Anaise's deposition" and Plaintiffs' counsel has yet to provide any dates for Dr. Anaise's deposition. (Defendant's Motion to Strike; *see also* DSOF, Ex. H) Plaintiffs did not respond to Defendant's Motion.

On February 8, 2006, the Court granted Defendant's Motion to Strike pursuant to L.R.Civ. 7.2(i) thereby striking Dr. Miller as Plaintiffs' rebuttal expert witness and requiring Plaintiffs to provide defense counsel with three alternate dates and times occurring before March 31, 2006, when Dr. Anaise would be available for deposition. (February 8, 2006 Order)

On July 7, 2006, after Plaintiffs' counsel was removed from the case, the Court reset deadlines including the deadlines for disclosure of rebuttal experts and fact witness, discovery, and dispositive motions. (July 7, 2006 Scheduling Order) The Court also vacated the February 8, 2006 Order striking Dr. Miller and advised Plaintiffs that they were not precluded from renaming Dr. Miller as a rebuttal expert as long as they complied with their disclosure obligations imposed by Rule 26(a)(2) within the deadline. (Id. at p.2 n.1) Pursuant to the July 7, 2006 Scheduling Order, expert disclosure was due by September 22, 2006; discovery ended on November 7, 2006; and dispositive motions were due by December 7, 2006.

On July 14, 2006 and August 15, 2006, defense counsel requested that Plaintiffs, who were now representing themselves, provide dates for the deposition of Dr. Anaise. (DSOF, Ex. H)

On August 18, 2006, Mr. Leyva telephonically notified defense counsel that Dr. Anaise had "informed Mr. Leyva that he was never retained by Mr. Marquez, that he has not

practiced medicine in years, and that he could not serve as an expert in Mr. Leyva's case." (Id.)

The discovery deadline has passed. To date, Dr. Anaise has not been made available for deposition. Defendant contends that pursuant to Rule 37(c) of the Federal Rules of Civil Procedure, Plaintiffs are precluded from relying on any expert testimony. (Defendant's Motion for Summary Judgment, pp. 6-7)

Rule 26(a)(2) of the Federal Rules of Civil Procedure governs disclosure of expert testimony and requires in pertinent part that such:

> disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed.R.Civ.P. 26(a)(2)(B). A party who "without substantial justification fails to disclose information required by Rule 26(a)...is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed.R.Civ.P. 37(c)(1). Such exclusion of witnesses and information not properly disclosed under Rule 26(a) "is automatic in the sense that there is no need for the opposing party to make a motion to compel disclosure..." prior to exclusion. Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, 8A *Federal Practice and Procedure* § 2289.1 (2d ed. 1994); *see also Yeti By Molly Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001) ("The Advisory Committee Notes describe it as a 'self-executing,' 'automatic' sanction....") "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti By Molly Ltd.,* 259 F.3d at 1107. It is well-settled in the Ninth Circuit that *"[p]ro se* litigants must follow the same rules of procedure that govern other

litigants." *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987); *see also Ghazali v. Moran,* 46 F.3d 52 (9th Cir. 1995) ("pro se litigants are bound by the rules of procedure").

The record reflects that Plaintiffs, through discovery, mentioned Dr. Wong, Dr. Miller, and Dr. Anaise.  Yet, Plaintiffs have provided no disclosure concerning Dr. Wong other than naming the doctor in their July 7, 2005 Answer to Interrogatories, and briefly stating that Dr. Wong "was of the opinion Mariposa Clinic and personnel fell below standard of care" and his testimony would concern his knowledge about "side effects and contra-indications of use of Oxycontin." (DSOF, Ex. E) Similarly, when Plaintiffs listed Dr. Miller as a rebuttal witness, only his name and address were provided.  (Plaintiffs' November 30, 2005 Notice of Rebuttal Witness) Although the Court initially struck Dr. Miller as a rebuttal witness, the Court subsequently vacated that order and advised Plaintiffs that they could once again name Dr. Miller or any other rebuttal expert as long as they complied with the expert disclosure requirements within the deadline.  (*See* February 8, 2006 Order; July 7, 2006 Scheduling Order) The record reflects  that Plaintiffs did not provide the required disclosure under Rule 26(a)(2) regarding  Dr. Wong and Dr. Miller.

Plaintiffs' 2003 administrative claim contained an affidavit signed on March 25, 2002 by Dr. Anaise indicating  Dr. Anaise's professional qualifications; his opinion that "Dr. Pina fell below the standard of care when she increased the dosage of Oxycontin dramatically by 100% and increased the frequency...rather than the dosage in clear violation of the manufacturer's recommendations"; and an explanation for his opinion. (DSOF, Ex. C) Although Dr. Anaise consented to the filing of the affidavit with a complaint or "in response to any Motion for Summary Judgment which may be filed," he also stated that "[t]his affidavit is not intended to encompass all of the opinions presently held by me.  Rather, as discovery progresses and additional information becomes available, I reserve the right to modify or alter or form additional opinions." (Id.)

Dr. Anaise's statements that the affidavit "is not intended to encompass all of the opinions *presently* held by me", (Id.) (emphasis added) clearly supports the conclusion that

his March 25, 2002 affidavit does not "contain a complete statement of all opinions to be expressed and the basis and reasons therefor" as required by Rule 26(a)(2)(B). Nor does the record contain a list of publications, if any, authored by Dr. Anaise within the preceding ten years or any other cases in which he has testified as an expert at trial or by deposition within the preceding four years. *See* Fed.R.Civ.P. 26(a)(2)(B). Although subsequent disclosure indicated that Dr. Anaise was paid $500 "thus far", Plaintiffs also indicated that they had not reached an agreement with him regarding testimony or fees. (DSOF, Ex. D) Thus, Plaintiffs never fully satisfied Rule 26(a)(2)(B)'s requirements regarding Dr. Anaise.

Although Plaintiffs' initial failure to comply with Rule 26(a)(2)(B) with regard to Dr. Wong, Dr. Miller, Dr. Anaise, or any other expert may have been substantially justified as the result of their former counsel's health problems which led to his removal from representation of Plaintiffs in this action, Plaintiffs' subsequent failure to meet the requirements of the rule after counsel's removal and an extension of the deadlines had been granted is not substantially justified on this record. This is especially so given that Plaintiffs have failed to provide any justification for such failure. Nor have Plaintiffs demonstrated that the failure is harmless to Defendant. *See Yeti by Molly,* 259 F.3d at 1106-1107 (the party failing to make disclosure bears the burden of establishing harmlessness). Defendant has not received any information required under Rule 26(a)(2) for Doctor Wong or Dr. Miller. Defendant has been deprived of the opportunity to prepare a rebuttal expert for Dr. Wong and to conduct discovery regarding both Doctors' opinions. Under such circumstances, to the extent that Plaintiffs may intend to rely on Dr. Wong and/or Dr. Miller as expert witnesses, Dr. Wong and Dr. Miller are automatically excluded as witnesses pursuant to Rule 37(c).

Likewise, Plaintiffs are not substantially justified in failing to make Dr. Anaise available for deposition if he was to serve as their expert. Such failure is not harmless given that the affidavit disclosed to Defendant did not contain Dr. Anaise's complete opinion. Most importantly, Plaintiffs were unable to satisfy Defendant's request to depose Dr. Anaise

because Dr. Anaise refused to serve as their expert witness.[4] Without Dr. Anaise's testimony as Plaintiffs' expert witness, the opinions expressed in his March 2002 affidavit are not admissible. Consequently, Plaintiffs are precluded from the use of expert witnesses under Rule 37(c) and/or have also failed to provide any admissible opinions from expert witnesses.

### D.     Review of Defendant's Motion for Summary Judgment

Defendant bears the burden to point out the absence of any genuine issue of material fact for trial. *See Celotex,* 477 U.S. at 323. As the movant for summary judgment, Defendant need do nothing more than refer to those materials on file in the case that support the movant's position that there is an absence of any genuine issue of material fact. *Musick,* 913 F.3d at 1394. Defendant correctly argues that without expert evidence, Plaintiffs "cannot prove a necessary element of their claim as required by A.R.S. § 12-563–that being, the applicable standard of care in this case and that the standard was violated." (Defendant's Motion for Summary Judgment, p.7 *citing McGuire,* 168 Ariz. at 90, 811 P.2d at 342). Likewise, without admissible expert evidence, Plaintiffs are unable to show that there is a genuine issue for trial under A.R.S. § 12-563. Defendant has also disclosed admissible evidence supporting its position that Dr. Pina's actions did not fall below the standard of care and that Dr. Pina's direction regarding Mr. Leyva's Oxycontin dosage was not the proximate cause of Mr. Leyva's injuries. Review of Defendant's Motion for Summary Judgment and supporting exhibits indicates that Defendant's papers are sufficient to support the Motion and do not on their face reveal a genuine issue of material fact. Further, despite the Court's December 8, 2006 Order expressly warning Plaintiffs of the consequences resulting from

---

[4]Plaintiffs have not refuted Defendant's statement that in August 2006 they were aware that Dr. Anaise had not been retained as an expert and would not serve as an expert in their case. (*See* DSOF Ex. H) Even though Plaintiffs had this knowledge prior to the expiration of the September 22, 2006 deadline for disclosure of expert witnesses and prior to expiration of the November 7, 2006 discovery deadline, Plaintiffs failed to obtain any other expert witness. Nor did they seek an extension of the deadlines from the Court in order to obtain another expert witness.

their failure to respond to Defendant's Motion for Summary Judgment, Plaintiffs have filed no response to Defendant's Motion. Therefore, on the instant record, Plaintiffs' failure to respond to Defendant's Motion for Summary Judgment is properly deemed as their consent to the granting of that Motion pursuant to L.R.Civ. 7.2(i).

### III.   CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the District Court grant Defendant's Motion for Summary Judgment (Doc. No. 56).

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within ten days after being served with a copy thereof. Fed.R.Civ.P. 72(b). If objections are filed, the parties should use the following case number: **CV 04-349-TUC-CKJ.**

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

The Clerk of Court is directed to send a copy of this Report and Recommendation to the parties and/or their counsel.

DATED this 7th day of May, 2007.

_____
Héctor C. Estrada
United States Magistrate Judge